David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| General Steel Domestic Sales, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>Ethan Daniel Chumley and<br>Atlantic Building Systems, LLC<br><br>   Defendants. | Case No: _____<br><br>**[Pending In The U.S. District Court,<br>District of Colorado,<br>Case No. 1:14-cv-01932-REB-CBS]**<br><br>**MOTION TO COMPEL<br>COMPLIANCE WITH SUBPOENA TO<br>XCENTRIC VENTURES, LLC** |

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Defendants Ethan Daniel Chumley and Atlantic Building Systems, LLC ("Defendants") move the Court for an order compelling non-party Xcentric Ventures, LLC ("Xcentric") to comply with a subpoena *duces tecum* seeking information which is relevant to underlying litigation currently pending in the U.S. District Court for the District of Colorado in Case No. 1:14-cv-01932-REB-CBS styled *General Steel Domestic Sales, LLC v. Chumley*, et al.

**I.   BACKGROUND**

This matter arises from a case currently pending in the U.S. District Court in Colorado. In short, the Colorado litigation involves claims that Defendants created a page on their website known as the "Industry Related Legal Matters" page which is available at: http://www.armstrongsteelbuildings.com/steel-building-industry-newsroom/ (the "IRLM page").

The IRLM page contains 37 individual posts which are comprised of two parts: 1.) text; and 2.) a "Read More" button. The text contained in each post represents a verbatim snippet taken from various sources including court orders, legal pleadings, and news articles located on various third party websites.

For example, the last entry on the IRLM page ("publication 37") contains a heading which reads: "James Conner v. General Steel Domestic Sales, LLC" followed by two short sentences of text as shown below:

**Example Post — Publication 37 from IRLM Page**

> **James Conner v. General Steel Domestic Sales, LLC**
> 
> U.S. District Court of Colorado - This action involves the purchase and sale of a custom, pre-engineered steel building. A dispute arose between the parties concerning the building.
>
> Read More

A visitor to this page who clicks the "Read More" button would be taken to a page on "Google Scholar" which is a free legal research service operated by Google where copies of legal pleadings are posted: https://scholar.google.com/scholar_case?case=8977664590345802443&hl=en&as_sdt=4006

As reflected below, the text shown on Defendants' IRLM page was copied verbatim from a court order entered in a lawsuit filed against General Steel by an unhappy customer named James Conner:

**Google Scholar Source Material — Publication 37 from IRLM Page**



1    Of the 37 total entries on the IRLM page, 20 mention or refer to General Steel. In its First Amended Complaint filed in the Colorado litigation (a copy of which is attached as <u>Exhibit A</u> to the declaration of counsel submitted herewith), General Steel claims that all 20 of these posts are false, misleading and/or defamatory for various reasons.

For example, with respect to publication 37 (which is identified as publication 20 in paragraph 221 of the FAC), General Steel claims the post in question is "Inaccurate and Intentionally Misleading" because:

> ¶ 222. This posting does not disclose that the statements published are unproven allegations and were/are contested.
>
> ¶ 225. Defendants again inaccurately and incompletely and misleadingly quote from irrelevant litigation matters in order to perpetuate their campaign of defamation.
>
> ¶ 226. Defendants fail to disclose the status of the proceeding.
>
> ¶ 227. The subject Post is not full [sic], complete and fair reporting of that case.
>
> ¶ 228 Defendants have selectively published inflammatory materials out of context.

General Steel has asserted three substantive claims against Defendants: 1.) False Advertising/Unfair Competition under the Lanham Act; 2.) Defamation; and 3.) Tortious Interference. General Steel has further disclosed that it is seeking at least $6 million in lost profits which it alleges should be trebled pursuant to 15 U.S.C. § 1117(a) meaning Defendants' exposure is potentially $18 million. General Steel is also seeking punitive damages against Defendants both individually and as to Mr. Chumley's corporation.

In addition to claiming that Defendants have misrepresented the particular facts of all 20 posts concerning it on the IRLM page, General Steel also claims that the IRLM page misrepresents the company's litigation history *in general*; "The [IRLM] page is neither accurate, complete or a fair summary of legal proceedings <u>against General Steel generally</u>, the particulars of each case cited or industry legal proceedings in general." FAC ¶ 32 (emphasis added).

In their Answer, attached as Exhibit B to the declaration of counsel submitted herewith, Defendants assert numerous affirmative defenses including truth, substantial truth, and lack of incremental harm.  Defendants' Answer also asserts that any losses experienced by General Steel have been caused by other factors.  See Exhibit B at 21–25.

In an attempt to obtain evidence relating to those issues, Defendants served a subpoena *duces tecum* on Xcentric which relates to its website, www.RipoffReport.com.  See Exhibit C.  Dozens of complaints about General Steel have been published on Xcentric's website, many of which contain exactly the same sort of allegations referenced on Defendants' IRLM page; i.e., that General Steel systematically defrauds its customers by giving them false information regarding the cost and/or time frame required to construct a building.  Below is just one such example dated December 12, 2012 which remains publicly available on the Ripoff Report site here: http://www.ripoffreport.com/r/General-Steel-Corp/Littleton-Colorado-80127/General-Steel-Corp-The-sales-person-misrepresented-the-time-frame-for-engineering-fabric-981091

**General Steel Corp The sales person misrepresented the time frame for engineering, fabrication, delivery, erection and construction cost. Littleton, Colorado**

I was told engineering would take 2 to 3 weeks, then it changed to 6 weeks after I gave deposit *I was told that fabrication would be 5 to 6 weeks, then it changed to 8 to 10 weeks after I gave the deposit *I was told that this project would take 3 months to completion, after the deposit I was told 3 to 4 months just to receive the steel *When I expressed concern about the clause in the signed specifications document stating "time is not of the essence", I was told not to worry as General Steel would deliver the building quickly because they don't get paid until I have my building *I was led to believe that General Steel is the manufacturer and they are not *I was provided an initial proposal for erection and all completion of $105,000.00 and told we would then get a minimum of 4 bids which were due 6/22/2012. I only received 2 bids and the lowest bid was more than double the proposal at $279,500.00 *I was told that we would not include the doors and windows in the engineering as that would be a "simple field fit" only to turn around and have a project coordinator try to upcharge me for doors, windows, gutters and downs as extras *I was then sent an email suggesting that I sign a waiver and shipping paperwork to expedite my order I refused to sign the waiver and demanded a refund and that was the last word I heard from General Steel

1  Defendants' subpoena to Xcentric requested just three categories of documents.
2  First, the subpoena sought any correspondence with third parties relating to complaints,
3  reviews, or comments about General Steel.  Second, the subpoena requested any
4  documents Xcentric had relating to complaints about General Steel which were *not*
5  *publicly visible* on the Ripoff Report website.  Third and finally, the subpoena requested
6  Google Analytics reports showing the total number of page views and other related
7  information pertaining to 24 separate pages on the Ripoff Report website which
8  contained complaints about General Steel.

9  In its response, a copy of which is attached as Exhibit D to the declaration of
10 counsel submitted herewith, Xcentric produced no information whatsoever in response to
11 the first two categories.  With respect to the third category—Google Analytics data—
12 Xcentric produced only a small amount of information showing the number of times each
13 complaint about General Steel on the Ripoff Report website was viewed.  Despite
14 promises by Xcentric's counsel that further information would be produced subject to a
15 protective order, no further response has been received.

16 **II.    ARGUMENT**

17 **A.    The Requested Discovery Is Relevant**

18 Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any
19 nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P.
20 26(b)(1) ("relevant information need not be admissible at trial if the discovery appears
21 reasonably calculated to lead to the discovery of admissible evidence"). Discovery is
22 mandatory, as long it is "reasonably calculated to lead to the discovery of admissible
23 evidence." *Id*. Relevant discovery must be compelled unless its burden or expense
24 "outweighs its likely benefit, considering the needs of the case, the amount in
25 controversy, the parties' resources, the importance of the issues at stake in the action and
26 the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii); *see*
27 *also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (holding that
28 relevance in discovery is "construed broadly to encompass any matter that bears on, or

that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.")

Here, all three categories of requested information are relevant to the defenses of truth, substantial truth, and/or incremental harm as asserted in Defendants' Answer. Specifically, under Colorado law, "A party asserting truth as a defense in a defamation action is not required to justify every word of the alleged defamatory matter. It is sufficient if 'the substance, the gist, the sting, of the matter is true.'" *Barnett v. Denver Pub. Co., Inc.*, 36 P.3d 145, 147 (Colo.App. 2001) (quoting *Gomba v. McLaughlin*, 180 Colo. 232, 236, 504 P.2d 337, 339 (1972)).

The posts on Defendants' IRLM page criticize General Steel's business practices by noting, for instance, that the Attorney General of Colorado filed a lawsuit against General Steel in 2004 accusing it of widespread instances of consumer fraud. This assertion is factually true; as explained in the Findings, Conclusions, and Order of Judgment attached as <u>Exhibit I</u> to the declaration of counsel submitted herewith, the Colorado Attorney General did, in fact, bring an action against General Steel in 2004 accusing the company of:

> (1) false representations as to the characteristics of goods, services or property, contrary to §6-1-105(1)(e); (2) material omissions concerning goods, services or property, contrary to §105(1)(u); (3) knowing misrepresentations as to the source of goods, contrary to §6-105(1)(b); (4) false or misleading statements regarding price, contrary to §6-1-105(1)(l); (5) failure to set forth terms and conditions of sale in a contract, contrary to §6-1-105(1)(m); and (6) bait and switch advertising, contrary to §6-1-105(1)(n)(VI).

Although General Steel cannot deny the existence of AG's lawsuit, it nevertheless suggests that Defendants' IRLM page creates a false and misleading impression as to the 2004 case because the page somehow implies that General Steel's prior misconduct from 2004 has continued unchanged into the present day, and thus the IRLM page "mislead[s] people searching for information about General Steel that [it] will defraud them on any new sales in 2014 and thereafter." FAC, Ex. H at ¶ 83. Put differently, General Steel's

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

1 argument is that whatever bad conduct it was guilty of in the past is no longer occurring
2 at the present time.

3    Defendants believe, however, that General Steel is still engaged in precisely the
4 same unlawful conduct that gave rise to the Colorado AG action in 2004.  This assertion
5 is supported by, among other things, the fact that complaints (such as the one reflected in
6 the screenshot on page four above) have been published on websites such as the Ripoff
7 Report as recently as December 2012 accusing the company of lying about the cost and
8 timeframe of the buildings it sells.

9    However, it is important to note that in early 2013, General Steel became a paid
10 member of Ripoff Report's "Corporate Advocacy Program".  As reflected on Xcentric's
11 website, members of this program can pay Xcentric to block new complaints from
12 appearing publicly on the Ripoff Report website.  *See* http://www.ripoffreport.com/
13 CorporateAdvocacyProgram How-It-Works.aspx

14    For that reason, the second category of documents requested by the subpoena
15 served on Xcentric asked for material "relating to complaints, reviews, or comments
16 received from any third party regarding GENERAL STEEL which were received by
17 [Xcentric] from any source but which are not publicly visible on www.ripoffreport.com."
18 (emphasis added).  This request would include copies of new/recent complaints regarding
19 General Steel which were blocked from public display not because they were false, but
20 rather because General Steel paid Xcentric to do so.  This information is plainly relevant
21 to rebut General Steel's allegation that its business practices have changed and that its
22 past misconduct is no longer occurring.

23    For its part, after stating that it would agree to produce some information subject
24 to a protective order (a promise that it failed to keep) Xcentric objected to this request on
25 the basis that it was "overbroad and unduly burdensome, and compliance would require
26 Xcentric Ventures, a non-party in this case, to devote many hours of manpower to search
27 for documents that may not exist."   As explained further below, this objection is without
28 merit.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

1    In addition to seeking information regarding blocked complaints, the subpoena to
2    Xcentric also requested information from "Google Analytics" such as data "reflecting the
3    total number of hits/views, and any other available visitor data such as date/time viewed,
4    referral source, view IP, viewer location, etc." for each page on the Ripoff Report website
5    that contained a complaint about General Steel.   This information is relevant to General
6    Steel's alleged damages which are based almost entirely on alleged lost sales resulting
7    from people seeing links to Defendants' IRLM website in search engines such as Google.

8    This information is necessary because Defendants' IRLM page is not the only
9    source of negative information about General Steel on the Internet.  Far from it; as noted
10   in the subpoena itself, there are more than 20 extremely harmful complaints currently
11   appearing on the Ripoff Report site which accuse General Steel of fraud, theft, and other
12   misconduct.   Dozens of similar complaints appear on other websites such as
13   ConsumerAffairs.  *See* http://www.consumeraffairs.com/homeowners/general_steel.html

14   Evidence showing the number of page views (which Xcentric has already
15   disclosed) and other information which has not been disclosed such as the specific search
16   terms used and the dates/times of each visit are critically important to prove that General
17   Steel's lost profits, if any, were not caused by Defendants' website.  This is so because
18   like many other states, Colorado has adopted the "incremental harm doctrine" which
19   generally provides that "when unchallenged or nonactionable parts of a particular
20   publication are damaging, another statement, though maliciously false, may not be
21   actionable because it causes no harm beyond the harm caused by the remainder of the
22   publication." *Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 965 (Colo.App. 2000) (citing
23   *Masson v. New Yorker Magazine*, 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991);
24   *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 516 F.Supp. 742, 750 (S.D.N.Y.
25   1981)); *see also Austin v. American Ass'n of Neurological Surgeons*, 253 F.3d 967, 974
26   (7th Cir. 2001) (explaining, "Tort law does not seek to prevent injuries arising from the
27   dissemination of truthful information that rationally induces withdrawal of patronage
28   from the person whom the information concerns. So [a plaintiff], had he proved a wrong,

would have had to partition the injury resulting from it between the part due to the revelation of truthful information and the part due to the [allegedly false statements]. Compare the many cases which hold that the victim of defamation can obtain damages only for incremental harm done to his reputation by the defamation-if his reputation has already been destroyed by truthful information, he has no remedy.")

Because numerous other websites (including the Ripoff Report) are currently publishing harmful and derogatory statements about General Steel, Defendants are entitled to argue that those pages, rather than their IRLM page, caused the tens of millions of dollars in damages claimed by General Steel. Accordingly, the Court should order Xcentric to produce the full report of Google Analytics data currently being withheld.

### B.    The Requested Discovery Is Not Burdensome

When responding to a subpoena served under Rule 45, "[I]t is well-settled that all grounds for objection must be stated with specificity." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D.Cal.2005). Moreover, conclusory objections are insufficient to excuse the production of facially relevant evidence; "An objecting party must state specifically how, despite the broad and liberal construction of the discovery rules, each question is overly broad, unduly burdensome, or oppressive <u>by submitting affidavits or offering evidence revealing the nature of the burden</u>." *Voxpath RS, LLC v. LG Elect. U.S.A., Inc.*, 2013 WL 5744045, *2 (D. Ariz. 2013) (citing *Klein v. AIG Trading Group, Inc.*, 228 F.R.D. 418 (D.Conn. 2005); *Doyle v. F.B.I.*, 722 F.3d 554 (9th Cir. 1983)).

Here, other than an unsupported conclusory suggestion that searching for complaints about General Steel submitted since early 2013[1] would be unduly burdensome, Xcentric has offered no affidavits explaining what steps would be required

---

[1] Because General Steel became a member of Xcentric's CAP program in 2013, complaints submitted to the Ripoff Report before that date were not blocked and thus are not within the scope of the subpoena. Because Defendants are only interested in obtaining information about complaints which were received by Xcentric but which were *not published*, the time frame in question is only approximately 24 months—i.e., from early 2013 through the present.

to locate this information, nor has it done anything to show that the process would involve anything beyond a simple search of its records. Xcentric bears the burden of showing that the information requested is not just burdensome, but *unreasonably so*, but it has offered no evidence of any kind to support that position. For that reason, Xcentric's burden-based objection is without merit and should be overruled.

### III.   CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court issue an order compelling Xcentric to comply with the subpoena *duces tecum*, and awarding such other and further relief as the Court deems appropriate.

DATED March 10, 2015.

**GINGRAS LAW OFFICE, PLLC**

/S/ David S. Gingras
David S. Gingras
Attorney for Defendants

**CERTIFICATE OF GOOD FAITH**

Pursuant to Fed. R. Civ. P. 37(a)(1), I hereby certify that I have made good faith efforts to meet and confer with Xcentric's counsel in an effort to resolve the issues set forth in this motion without court action and that these efforts have been unsuccessful.

DATED March 10, 2015.

/s/David S. Gingras